NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee,

v.

WITTEKIND et al., Appellants.

[Cite as *Nationwide Mut. Fire Ins. Co. v. Wittekind* (1999), 134 Ohio App.3d 285.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 99CA11.

Decided Sept. 7, 1999.

286

John E. Triplett, for appellee.

Michael J. Manuszak, for appellants.

HARSHA, Judge.

The family and estate of James Bobby McGinnis appeal the grant of summary judgment to appellee, Nationwide Mutual Fire Insurance Company ("Nationwide"), and assign the following errors:

## First Assignment of Error

"The lower court erred in granting summary judgment in favor of Plaintiff–Appellee, Nationwide Mutual Fire Insurance Company, on the ground that evidence submitted in support of such motion by such plaintiff-appellee was insufficient and unacceptable pursuant to Rule 56(E) of the Ohio Rules of Civil Procedure.  * * *"

## Second Assignment of Error

"The lower court erred in finding that an incident involving the operation of a rented jet ski by Defendant Jeremy Wittekind as an insured was excluded from coverage under a policy of insurance of Plaintiff–Appellee, Nationwide Mutual Fire Insurance Company, on the ground that the word 'watercraft' as applied to a jet ski for purposes of invoking such exclusion is ambiguous as used therein."

James Bobby McGinnis was killed when a jet ski [1] operated by seventeen-year-old Jeremy Wittekind collided with the jet ski on which James was a passenger. Jeremy's parents, Roger and Jane Wittekind, had a homeowner's policy with Nationwide that provided some insurance for personal liability, but contained the following exclusion:

"1.  Coverage E–Personal Liability, and Coverage F–Medical Payments to Others do not apply to bodily injury or property damage:

"* * *

"e.  arising out of the ownership maintenance, or use of:

"* * *

"(3) a watercraft owned by or rented to an insured:

"(a) if the watercraft has inboard or inboard-outdrive motor power of more than 50 horsepower."

Appellee filed a complaint seeking a declaratory judgment that it did not owe any coverage to the Wittekinds under the policy for claims arising out of the death of James Bobby McGinnis.  The family and estate of James Bobby McGinnis were also named as defendants.  The Wittekinds counterclaimed against Nationwide seeking a declaratory judgment that Nationwide owed a legal defense to them in any wrongful death action filed by the beneficiaries of James Bobby McGinnis and must pay up to the policy limits if a judgment is entered against them.  Nationwide then filed for summary judgment on the basis that liability arising out of Jeremy's use of the jet ski was excluded under the policy.

---

1.  We use the term "jet ski" to refer to any brand of "personal watercraft."

Nationwide attached an affidavit of its claim representative, Conway Miller, to its motion for summary judgment. It states:

"Now comes Conway Miller, being first duly sworn and cautioned according to law and states as follows:

"1. That he has personal knowledge of the contents of his Affidavit, based upon his investigation, except where otherwise noted.

"* * *

"3. That he investigated the accident involving Jeremy Wittekind at Barefoot Landings Water Sports on July 24, 1996.

"* * *

"5. That Jeremy Wittekind was operating a Sea–Doo GTS model watercraft at the time of the July 24, 1996 accident, which was powered by 60 hp rotex marine plant, according to the advertising literature he obtained from Barefoot Landings."

Attached to the affidavit were advertisements for Barefoot Landings that described the jet skis as having sixty horsepower and the technical data of the Sea–Doo GTS model watercraft that described a sixty-horsepower power plant. In response, the Wittekinds filed for summary judgment on the issue of Nationwide's duty to defend them. The trial court granted Nationwide's motion and denied the Wittekinds' motion.

■ In both of their assignments of error appellants assert that the trial court erred in granting Nationwide's motion for summary judgment. In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, *i.e.,* we review the judgment independently and without deference to the trial court's determination. *Midwest Specialties, Inc. v. Firestone Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; cf., also, *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352, 353–354; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Additionally, a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which (1) that party bears

the burden of production at trial, and (2) for which the moving party has met its initial burden. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus; and *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 623 N.E.2d 591.

In their first assignment of error, appellants argue that the affidavit filed in support of appellee's motion for summary judgment was insufficient to support the trial court's ruling. At the core of this argument is the assertion that Miller's statement in his affidavit that the jet ski that Jeremy Wittekind was operating had a sixty-horsepower capability was not based upon personal knowledge. However, appellants failed to object to the affidavit attached to appellee's motion for summary judgment. Failure to object to the court's consideration of the evidence submitted in support of a motion for summary judgment constitutes waiver of any alleged error in the consideration of the evidence. *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 523 N.E.2d 902; *Cowen v. Lucas* (June 30, 1997), Scioto App. No. 96CA2456, unreported, 1997 WL 362013; *Cassidy v. U.S. Health Corp.* (Mar. 18, 1994), Scioto App. No. 2158, unreported, 1994 WL 88942. A trial court may consider evidence other than the evidence specified in Civ.R. 56(C) where no objection has been raised. *Id.* Thus, we overrule appellants' first assignment of error.

In their second assignment of error, appellants argue that the trial court erred in determining that, as a matter of law, the policy exclusion regarding liability arising out of an insured's use of a "watercraft" was applicable. They assert that the term "watercraft" is ambiguous and must be construed strictly against Nationwide and therefore does not include the jet ski that Jeremy Wittekind was operating. They further argue that any ambiguity could have been remedied by reference to a "personal watercraft," which would have included the jet ski.

An insurance policy is a contract between the insurer and the insured. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph one of the syllabus. The construction of written contracts is a matter of law. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 567 N.E.2d 262. When possible, words and phrases of an insurance policy should be given their natural and commonly accepted meaning, so that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 24 O.O.3d 274, 436 N.E.2d 1347; *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380. If the language of an insurance contract is reasonably susceptible of more than one interpretation, then it is ambiguous, and

therefore will be construed in favor of the insured. *Gomolka,* syllabus; *King,* syllabus. However, the mere absence of a definition in an insurance policy does not make the term ambiguous. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686.

"Watercraft" has a commonly accepted meaning as used in the insurance policy; that is, a vessel that is used on water, such as a boat or ship. See Merriam Webster's Collegiate Dictionary (1993) 1335 (defines "watercraft" as a craft for water transport); Webster's New Universal Unabridged Dictionary (1996) 2147 and 231 (defines "watercraft" as any boat or ship; defines "boat" as a vessel for transport by water, constructed to provide buoyancy by excluding water). This definition includes the watercraft commonly referred to as a "jet ski" or "personal watercraft." The term "watercraft" is not rendered ambiguous simply because it includes *all* boats, ships, and other vessels that travel on water; a term is not ambiguous simply because it includes a wide variety of objects or concepts in its definition.

Moreover, the appellants assert that Nationwide should have used the term "personal watercraft" to describe a jet ski. In so doing, they *ipso facto* include jet skis in the definition of watercraft. For whatever else a "personal watercraft" is defined as, it is still a subset of "watercraft." Therefore, the trial court did not err in determining that the insurance policy at issue excluded any liability, as a matter of law, incurred by the Wittekinds as a result of Jeremy's use of the jet ski. Therefore, Nationwide was entitled to summary judgment. Accordingly, we overrule their second assignment of error.

Having rejected both of appellants' assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

Peter B. Abele and Evans, JJ., concur.